# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

PHYLLIS J. LEONE                              CIVIL ACTION NO. 19-309

VERSUS                                        JUDGE ELIZABETH E. FOOTE

CADDO PARISH, ET AL.                          MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by Defendants, Caddo Parish School Board ("CPSB") and Erin Redden ("Redden") (collectively, "Defendants"). The motion has been fully briefed. For the reasons below, the motion [Record Document 46] is **GRANTED IN PART** and **DENIED IN PART**.[1]

## BACKGROUND

Plaintiff, Phyllis Leone, Ph.D. ("Plaintiff"), has been employed by the CPSB since 1972. Record Document 46-7 at 2–3. She has worked in a variety of positions including classroom teacher, resource teacher for children with disabilities, school principal, educational diagnostician, and, since approximately 1999, a 504 specialist.[2] *Id.* As a 504 specialist, Plaintiff assisted with developing academic plans for "504 students," students with disabilities and barriers to learning. At all relevant times for this case, Plaintiff was employed as a 504 specialist. *Id.*

---

[1] On December 30, 2021, Plaintiff filed a motion for leave to file a supplemental affidavit in opposition to Defendants' motion for summary judgment. Record Document 61. However, the briefing deadlines, which included supplemental briefing, had already passed and the Court had taken this motion under consideration. This request thus is untimely. Additionally, this affidavit has not been cited in any brief; the Court will not review this affidavit and guess at its relevance. For these reasons, Plaintiff's motion [Record Document 61] is **DENIED**.

[2] Section 504 of the Rehabilitation Act of 1973 is a civil rights law designed to protect people with disabilities by eliminating barriers and allowing full participation in areas such as education and the workplace.

Plaintiff filed this suit against Defendants for workplace retaliation, amongst other things. Plaintiff claims that Redden, Plaintiff's supervisor, retaliated against her for advocating for Caddo Parish's 504 students. Record Document 50-2 ¶¶ 2–7. She accuses the CPSB of being complicit and acquiescent to Redden's alleged retaliatory conduct. Record Document 50-1 ¶ 2. The alleged conduct that forms the basis of this complaint happened largely from 2017 to 2018.

During the fall of 2017, Plaintiff engaged in conduct that she claims was advocacy for section 504 students.[3] Plaintiff avers that the CPSB was not adequately performing dyslexia assessments and she felt the need to advocate on behalf of students and parents, even at the expense of the school board, because of the parish's deficiencies. Record Document 50-2 ¶¶ 2–3, 6. Plaintiff does not dispute that she attended some meetings and parent-teacher conferences unrelated to her assigned schools where she interjected her opinion as to the school board's deficiencies regarding dyslexia assessment. Record Documents 46-1 ¶¶ 6–9; 50-1 ¶¶ 6–9; 50-2 ¶¶ 2–3, 6. Plaintiff also does not dispute that there are separate dyslexia specialists employed by CPSB and that she confronted several dyslexia employees about their job performances and salaries. Record Documents 46-1 ¶¶ 6–9; 50-1 ¶¶ 6–9; 50-2 ¶¶ 2–3, 6. Plaintiff contends that this advocacy was of personal importance as well as her duty under section 504 of the Rehabilitation Act. Record Document 50-2 ¶¶ 2–6. After her advocacy, Plaintiff maintains that Redden engaged in a campaign of retaliation against her because her advocacy made Redden's job not as "convenient or easy." *Id.*

The first alleged retaliatory incident pertained to a letter of reprimand Plaintiff received following her assignment to monitor a state standardized test. On April 17, 2018, Plaintiff was a monitor for a state standardized test at Werner Park Elementary. *Id.* ¶ 8. Later that same day,

---

[3] Plaintiff's memorandum does not point the Court to any specific dates as to when she engaged in protected activity. The only specific dates the Court has been able to identify are September 2017 and October 2017. Record Document 46-4 at 1–2, 7–16.

Plaintiff emailed Melissa Mainiero, the supervisor of assessment and accountability, and expressed concern about plagiarism because the start of some students' responses were similar. *Id.* Ms. Mainiero and Angela Henry determined that Plaintiff breached testing procedures by looking at student responses for reasons other than ensuring that the student was working on the correct section. Record Documents 46-1 ¶ 13; 50-1 ¶ 13; 50-16 at 1. The parties do not dispute that discipline could be warranted for such a violation. Record Documents 46-1 ¶ 14; 50-1 ¶ 14. On April 18, 2018, Redden sent Plaintiff a written reprimand regarding the incident. Record Documents 46-1 ¶¶ 15–16; 50-1 ¶¶ 15–16. Plaintiff signed the memorandum of concern, but she maintained that her actions were not a breach of testing security. Record Documents 46-1 ¶ 16; 50-1 ¶ 16.

The second alleged retaliatory act involved Redden referring Plaintiff for a fitness for duty evaluation and Plaintiff's subsequent placement on administrative leave. The CPSB provided Plaintiff with a rental car to attend a continuing education seminar from April 21 to 25, 2018, in Dallas, Texas. Record Documents 46-1 ¶ 17; 50-1 ¶ 17. Redden and several other CPSB employees attended the event but drove separately from Plaintiff. Record Documents 46-1 ¶ 18; 50-1 ¶ 18. On April 27, 2018, Plaintiff sent Redden an incident report wherein Plaintiff claimed to have experienced a near fatal accident on the drive on April 21, 2021. Record Documents 46-1 ¶ 19; 50-1 ¶ 19. Shortly after, Redden requested for Plaintiff to undergo a fitness for duty evaluation. Record Documents 46-1 ¶¶ 20–22; 46-4 at 20; 50-1 ¶¶ 20–22. Diane Atkins reviewed the request and sent it to Charles Lowder, CPSB's Director of Certified Personnel, for final review. Record Documents 46-1 ¶ 23; 50-1 ¶ 23. On May 4, 2018, Lowder met with Plaintiff and informed her that she was being placed on paid administrative leave pending the fitness for duty evaluation. Record Documents 46-1 ¶ 23; 50-1 ¶ 23. Will Jones, CPSB's Employee Assistance Program Administrator,

scheduled the evaluation and cleared Plaintiff to return to work three weeks later after an outside specialist determined that she was fit for duty. Record Documents 46-1 ¶ 24; 50-1 ¶ 24.

While Plaintiff was on paid leave, Redden assigned other 504 specialists to cover Plaintiff's responsibilities. Record Documents 46-1 ¶ 25; 50-1 ¶ 25. Upon Plaintiff's return to work, she received a letter from Redden in which Redden detailed certain problems with Plaintiff's student files and Redden's expectations moving forward regarding proper documentation. Record Documents 46-1 ¶ 26; 50-1 ¶ 26. The letter contained a list of missing documents and other documentation issues. Documents 46-1 ¶ 26; 50-1 ¶ 26. Following this letter, Plaintiff made a formal ADA request for an accommodation because she is missing her fingers and thumb on one of her hands. Record Documents 46-8 at 50; 50-2 ¶ 16; 50-23. Plaintiff contends that her typing tasks were impossible to complete during normal working hours because her disability only allowed her to type with one hand. Record Document 50-2 ¶ 16. Plaintiff requested additional compensatory time off as an accommodation for having to stay late to finish her reports. Defendants denied her request. *Id.*

The final specific alleged retaliatory act was Plaintiff's placement on a performance improvement plan ("PIP"). Before being placed on a PIP, Plaintiff does not dispute that she confronted Lisa Davison, a CPSB autism coordinator, three or four times about Plaintiff's grandson and her family's desire to transfer him to Captain Shreve High School. Record Documents 46-1 ¶ 27; 46-4 at 4, 17–19; 50-1 ¶ 27. Because of this, on August 28, 2018, Diane Atkins, Keith Burton, Dr. Shelia Lockett, Charles Lowder, and Redden conducted a meeting where it was decided to reach out to outside counsel for legal advice regarding Plaintiff's conduct. Record Documents 46-1 ¶ 28; 50-1 ¶ 28. Based on the consultation with outside counsel, the CPSB decided to place Plaintiff on a PIP. Record Documents 46-1 ¶ 28; 50-1 ¶ 28. Lowder then forwarded Redden the PIP and directed

Redden to give it to Plaintiff. Record Documents 46-1 ¶ 29; 50-1 ¶ 29. Redden had Plaintiff sign the PIP on August 31, 2018. Record Documents 46-1 ¶ 30; 50-1 ¶ 30.

On September 25, 2018, Plaintiff filed a formal complaint with the Louisiana Department of Education regarding CPSB's alleged section 504 failures. Record Document 46-7 at 17–19. A few months later, Plaintiff received a two-year contract renewal that would run until June 29, 2020. Record Documents 46-1 ¶ 32; 50-1 ¶ 32. Plaintiff accepted this appointment on November 5, 2018. Record Documents 46-1 ¶ 32; 50-1 ¶ 32. A few months later, Plaintiff filed a notice of intent to resign/retire effective January 31, 2019, which she changed to March 1, 2019. Record Documents 46-1 ¶¶ 33–34; 46-7 at 6; 50-1 ¶¶ 33–34.

Plaintiff alleges that Defendants' retaliatory conduct was designed to silence her right to free speech in violation of the First Amendment.[4] Record Document 17. Additionally, Plaintiff contends that her advocacy on behalf of students with disabilities was protected activity and that Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by retaliating against her for such advocacy. *Id.* Additionally, Plaintiff contends that the denial of her request for an accommodation was a violation of the ADA. *Id.* Lastly, Plaintiff has brought a state law claim for intentional infliction of emotional distress. *Id.* Defendants have now moved to dismiss all claims. Record Document 46.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue

---

[4] Plaintiff has brought her First Amendment claims under 42 U.S.C. § 1983.

of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

# LAW & ANALYSIS

## I.   ADA and RA Retaliation Claims

### A.  Applicable Law

Plaintiff contends that she was retaliated against for advocating on behalf of children entitled to section 504 benefits in violation of the ADA and RA. Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas*[5] framework applies. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 368 n.6 (5th Cir. 2012); *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004); *Volson v. U.S. Dep't Veteran Affs.*, No. 1:18-CV-01633, 2020 WL 4760318, at *6 (W.D. La. Aug. 17, 2020). To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the adverse employment action and the protected activity. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions. *Id.* If the employer articulates such a reason, the burden again shifts to the plaintiff to prove that the employer's stated reason for its action is merely pretext for retaliatory animus. *Id.* at 557. "In order to avoid summary judgment, the plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity." *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks and citation omitted).

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

### B.  Application

Plaintiff alleges that she engaged in protected activity by advocating for the rights of section 504 students and their parents. Plaintiff does not clearly allege the specific dates on which she engaged in such protected activity. Based on the Court's review, it appears Plaintiff publicly spoke out on behalf of 504 students and their parents in September 2017 and October 2017.[6] Record Document 46-4 at 1–2, 7–16. After this advocacy, Plaintiff accuses Defendants of launching a campaign of retaliation against her starting in April 2018. Plaintiff contends the following adverse acts were in retaliation for her advocacy: (1) the April 18, 2018 letter of reprimand; (2) the May 2, 2018 referral for a fitness for duty evaluation and subsequent placement on administrative leave; (3) Redden's May 2018 memorandum regarding deficiencies in Plaintiff's 504 files; (4) the denial of her request for an ADA accommodation; and (5) the August 31, 2018 PIP. Record Document 50 at 9–13.

Even assuming *arguendo* that Plaintiff could make out a prima facie case, Defendants have offered legitimate, nonretaliatory reasons for each action. As to the April 18, 2018 letter of reprimand, Defendants maintain that it was in direct response to Plaintiff's April 17, 2018 email regarding student responses on the state standardized test. Record Document 46-2 at 21. Although Plaintiff denies breaking any security protocols, she admits to examining student responses for purposes other than to ensure the students were working on the proper section. Record Document 50-2 ¶ 8.

---

[6] Plaintiff has not directed the Court to any other concrete instances of Plaintiff's advocacy, and the Court has found none on its own examination of the record. It is not the duty of the Court to sift through the record to determine the relevant facts. That duty lies with the attorneys. As such, the Court shall only consider these dates for this motion.

Additionally, as to the May referral for a fitness for duty evaluation and Plaintiff being placed on administrative leave, Redden contends that she had legitimate concerns for Plaintiff's well-being as well as concerns for the school board's liability based on Plaintiff's recent conduct. Record Document 46-2 at 21. Redden's request for the evaluation directly followed the test security incident and Plaintiff's report detailing a near death experience while driving to Dallas at the end of April 2018. Redden's report articulated these two incidents as grounds for her request. Redden also expressed concern about the accuracy of Plaintiff's description of events in her incident report and the fact that Plaintiff did not mention the incident while they both were attending the same conference in Dallas. Record Document 46-4 at 20. Further, Redden proffered that the memorandum she issued to Plaintiff upon Plaintiff's return to work was merely to document deficiencies regarding Plaintiff's 504 files and to express her expectations moving forward, not to discipline Plaintiff. Record Document 46-2 at 22.

Defendants also contend that they could not approve Plaintiff's accommodation request for additional compensatory time off because Plaintiff was an exempt salaried employee. *Id.* at 24. Additionally, Defendants argue that Plaintiff had the same documentation requirement as she had before she engaged in protected activity and never had past difficulties fulfilling the documentation requirements. *Id.* Lastly, Defendants maintain that the PIP was in direct response to an allegation that Plaintiff confronted a co-worker multiple times in a hostile manner about a personal matter regarding Plaintiff's grandson. *Id.* at 22. Defendants aver that the PIP was further warranted based on the cumulation of incidents detailed above. Record Document 46-4 ¶ 16. Considering Defendants' proffered reasons, the Court finds that Defendants have produced legitimate, nonretaliatory reasons for their actions.

As such, the burden shifts to Plaintiff to show that Defendants' proffered reasons are merely pretext for discrimination. At this stage, Plaintiff must demonstrate but-for causation, which requires proof that the alleged retaliation would not have occurred absent the protected activity. *Feist*, 730 F.3d at 454. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy*, 492 F.3d at 557.

Here, Plaintiff has not offered sufficient evidence to allow a jury to reasonably conclude that the reasons proffered by Defendants were pretext for retaliatory animus. Plaintiff tries to create a dispute of material fact by disputing the underlying bases for Defendants' decisions. *See generally* Record Document 50-2. For example, Plaintiff subjectively believes that she did not act outside the scope of her job duties or breach testing security. *Id.* ¶¶ 2–8. She argues that her subjective belief of the propriety of her conduct creates a dispute of material fact for trial. However, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). In sum, Plaintiff's subjective belief of the propriety of her conduct does not undermine her employer's belief to the contrary and does not suggest Defendants were motivated by retaliatory animus. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–09 (5th Cir. 1999).

Although Plaintiff may dispute Defendants' decisions, "she offers no evidence that [Defendants] would not have [taken similar actions]" towards "another employee for [similar conduct]." *Feist*, 730 F.3d at 455. Additionally, the undisputed material facts lend credence to Defendants' proffered reasons. Plaintiff does not dispute that her advocacy occurred during work time and concerned matters outside of her department or involved students not at her assigned

schools. It is undisputed that Plaintiff viewed student standardized testing responses for reasons other than to ensure students were working in the correct section, which is a security violation according to the "Active Monitoring" sheet Plaintiff has submitted as evidence. Record Document 50-16. She does not dispute that she sent a report to Redden detailing a traumatic experience on her car ride to Dallas and that the request for a fitness for duty evaluation and placement on administrative leave occurred several days after Redden received this report and shortly after the testing security incident. Although Plaintiff offers an explanation for her incomplete student files, she does not dispute that her student files were incomplete at the time of her administrative leave and that the letter she received on her return to work only addressed proper documentation. *See* Record Document 50-2 ¶ 13. Lastly, Plaintiff admits that she approached Lisa Davison multiple times regarding her grandson and that the PIP followed soon after Davison lodged a complaint against Plaintiff. Record Document 46-7 at 25–26.

Furthermore, the lack of a close temporal proximity between the alleged retaliatory conduct and Plaintiff's protected activity further supports Defendants' proffered reasons. Based on the evidence, Defendants alleged retaliatory acts commenced in April 2018, which was six months after Plaintiff purportedly engaged in protected activities. The Fifth Circuit has found that a five-month gap between the adverse action and the protected activity "is not close enough [to support a causal connection] without other evidence of retaliation." *Feist*, 730 F.3d at 454 (citation omitted). Without the temporal factor or other substantial evidence of pretext, Plaintiff is left with only her subjective belief that she was retaliated against for advocating for 504 students and their parents.

In sum, the summary judgment record supports a finding that each action taken by Defendants was a direct response to Plaintiff's specific conduct unrelated to any protected activity. Plaintiff has produced no evidence other than her own subjective belief that she was retaliated

against for engaging in protected activity. As such, Plaintiff has failed in her burden of showing that Defendants would not have taken these actions but for Plaintiff's advocacy. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's ADA and RA retaliation claims.

## II.   42 U.S.C. § 1983 Claims

Title 42, United States Code, Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

Plaintiff has brought claims for violations of her First Amendment rights pursuant to 42 U.S.C. § 1983. Courts refer to § 1983 claims against municipalities as *Monell* claims. *See Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). *Monell* is inapplicable to Redden, as she was sued in her individual capacity. Redden has asserted qualified immunity as a defense to the § 1983 claims against her. The Court will address the claims against CPSB and Redden in turn.

### A.  *Monell* Liability

Plaintiff alleges that CPSB violated § 1983 because it "encouraged, condoned, and empowered Redden's retaliation against [Plaintiff] by blindly and willfully ignoring [Plaintiff's] complaints." Record Document 50, p. 14. To impose liability on a municipality under § 1983, a plaintiff must prove the existence of three elements: (1) a policymaker; (2) an official policy; and

(3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Requiring a plaintiff to identify an official policy ensures that the municipality will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). A municipality cannot be sued under § 1983 based on a theory of *respondeat superior* for a constitutional tort committed by one of its employees. *Id.*

To satisfy the "official policy" element of a *Monell* claim, a plaintiff may either point to a policy statement that was promulgated by an official policymaker or to "a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Id.* "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

Here, Plaintiff's allegations are premised on the alleged retaliation of individual actors. She does not identify a final policymaker, nor does she allege that a final policymaker took a single unconstitutional act against her. Moreover, Plaintiff has produced no evidence that this type of conduct has occurred in cases other than her own. Thus, Plaintiff is unable to identify any widespread policy or custom of encouraging or ignoring retaliation complaints or condoning

alleged violations of the First Amendment. Defendants are entitled to summary judgment as to this claim.

### B. Qualified Immunity

Redden asserts qualified immunity in response to Plaintiff's § 1983 claim against her for alleged First Amendment violations. The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection exists to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). While qualified immunity is technically an affirmative defense, it is the plaintiff's burden to negate the defense once it has been raised. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

1. Alleged Violation of the First Amendment

Plaintiff alleges that Redden violated her First Amendment right to free speech through her retaliatory conduct. Plaintiff's First Amendment retaliation claim largely mirrors her ADA and RA retaliation claims. A First Amendment retaliation claim in the employment context requires the plaintiff to show that "(1) an adverse employment action was taken, (2) speech involving a matter of public concern was uttered, (3) the employee's interest in speaking outweighs the employer's interest in efficiency, and (4) the protected speech precipitated the adverse employment action." *McCoy*, 492 F.3d at 562. If a plaintiff establishes a prima facie case, Defendants "may still avoid liability by showing that they would have taken the same adverse employment action even in the absence of the protected speech." *Haverda v. Hays Cnty.*, 723 F.3d 586, 595 (5th Cir. 2013) (citing *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This is known as the "*Mt. Healthy* defense." *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 332 (5th Cir. 2021). "However, an employee may still refute that showing by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual." *Haverda*, 723 F.3d at 595 (citing *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)).

For the purposes of this motion, the Court will assume without deciding that Plaintiff can satisfy the second and third elements of her prima facie case. The Court will evaluate the claims regarding the first element, adverse employment action, and fourth element, causation.

### i. Adverse Employment Action

Plaintiff suggests the following actions were adverse employment actions: (1) the April 18, 2018 letter of reprimand; (2) the May 2, 2018 referral for a fitness for duty evaluation and subsequent placement on administrative leave; (3) Redden's May 2018 memorandum regarding deficiencies in Plaintiff's 504 files; (4) the denial of her request for an ADA accommodation; and

(5) the August 31, 2018 PIP. The Fifth Circuit "has recognized that 'discharges, demotions, refusals to hire, refusals to promote, and reprimands' amount to actionable retaliatory conduct for a First Amendment claim." *Spears v. McCraw*, No. 20-50406, 2021 WL 3439148 (5th Cir. Aug. 5, 2021) (quoting *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011)). When viewing the evidence in a light most favorable to Plaintiff, the April 2018 letter of reprimand and May 2018 memorandum qualify as adverse employment actions under this standard because they could be considered formal reprimands. Plaintiff has thus satisfied the first element of her prima facie case as to the two reprimands.

It is less clear, however, as to whether being referred for psychological testing, being placed on paid administrative leave, being denied an accommodation request, and being placed on a PIP qualify as adverse employment actions. Previously, the Fifth Circuit has held that such actions do not qualify as adverse employment actions in the First Amendment context. *See Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (stating that "administrative matters" are not adverse employment decisions); *Spears*, 2021 WL 3439148, at *2 (citing *Colson v. Grohman*, 174 F.3d 498, 511–12, n.7 (5th Cir. 1999)). However, these cases were decided before the United States Supreme Court decision in *Burlington Northern & Santa Fe Railway Co. v. White*, which held that adverse employment actions in the Title VII retaliation context are governed by the "materially adverse" standard. 548 U.S. 53, 68 (2006). "That standard requires only that the adverse decision be enough to 'dissuade[ ] a reasonable worker' from engaging in protected conduct." *Spears*, 2021 WL 3439148, at *2 (quoting *Burlington*, 548 U.S. at 68). Although Redden's actions may satisfy the *Burlington* standard, the Fifth Circuit "has not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases." *Johnson v. Halstead*, 916 F.3d 410, 422 n.5 (5th

Cir. 2019) (citation omitted). Because "[i]t is not clearly established whether *Burlington*'s 'materially adverse' standard applies to retaliation for protected speech," Redden is entitled to qualified immunity for these alleged actions. *Id.*; *Spears*, 2021 WL 3439148, at *2.

### ii.  Causation

The fourth prong requires Plaintiff to show that "the protected speech precipitated the adverse employment action." *McCoy*, 492 F.3d at 562. In other words, Plaintiff must prove that her "speech was a substantial or motivating factor" for the adverse actions. *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). "Close timing between an employee's protected activity and an adverse action against [her] may provide the causal connection required to make out a prima facie retaliation case." *Id.* (internal quotation marks and citations omitted). However, as explained above, the six-to seven- month gap between the protected activity and the April 2018 letter of reprimand and May 2018 memorandum is too long to show causation by itself. *Id.* (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Absent temporal proximity, Plaintiff may satisfy the causation prong by showing "a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)). Plaintiff, however, has failed to come forward with sufficient evidence such that a reasonable jury could infer retaliatory animus.

The undisputed evidence shows that Plaintiff was issued a letter of reprimand the day after she reported similarities in student responses on the state standardized test. Implicit in this admission is that Plaintiff viewed student standardized testing responses for reasons other than to ensure students were working in the correct section, which is a security violation according to the "Active Monitoring" sheet Plaintiff has submitted as evidence. *See* Record Documents 46-7 at 41–45; 50-16. Although Plaintiff offers an explanation for her incomplete student files, she does not

dispute that her student files were incomplete at the time of her administrative leave and that the letter she received on her return to work only addressed proper documentation and expectations moving forward. *See* Record Documents 46-7 at 51–52; 50-2 ¶ 13. Other than her own subjective belief, Plaintiff has come forward with no affirmative evidence that these actions were in retaliation for protected speech. Plaintiff thus has failed to establish a prima facie case of retaliation.

Assuming *arguendo* that Plaintiff could establish a prima facie case, Redden has presented evidence that Plaintiff would have been disciplined regardless of the protected speech. Each action taken by Redden was a direct response to Plaintiff's specific conduct unrelated to any protected activity. *See Anderson*, 9 F.4th at 332 (citing *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000)). As discussed in detail above, the Court finds that Redden has satisfied her burden in showing that she had valid reasons to discipline Plaintiff. *Id.* Therefore, Plaintiff must show that Redden's proffered reasons are pretextual for unlawful retaliation. *Id.*

Here, Plaintiff has advanced the same argument regarding pretext as her ADA and RA retaliation claims. As discussed in detail above, Plaintiff has failed to come forward with sufficient evidence to establish pretext. "This evidentiary shortcoming does not produce a different result simply because this claim is grounded in the First Amendment's, and not [the ADA's and RA's], protection of her speech." *McCoy*, 492 F.3d at 562–63. Because Plaintiff has failed to establish a violation of her First Amendment right arising from the actions taken against her, Redden is entitled to qualified immunity and dismissal of this claim.

## III.   <u>Constructive Discharge Theory</u>

Plaintiff's complaint does not articulate any discrimination or retaliation surrounding her resignation/retirement. *See* Record Document 17. In fact, the complaint does not mention the end of her employment. Therefore, Plaintiff's complaint does not plausibly support a discrimination or

retaliation claim premised on constructive discharge. However, out of an abundance of caution and because the parties briefed the issue, the Court will address the merits.

In Plaintiff's deposition, she contends that she was forced to resign because the working environment became unbearable. Record Document 46-7 at 29–30. "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *McCoy*, 492 F.3d at 557 (citation omitted). "This inquiry is an objective, reasonable employee, test under which we ask whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.* (internal quotation marks and citation omitted). The following factors are relevant when evaluating an alleged constructive discharge:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Id.* (citations omitted).

Here, even viewing the evidence in a light most favorable to Plaintiff, a reasonable employee would not have felt compelled to resign. Plaintiff does not allege that she was demoted, suffered a reduction in salary, or was not paid in full for the entirety of her leave. Additionally, Plaintiff never was reassigned or had her job responsibilities reduced, and there is no evidence that she received an offer of early retirement. Therefore, Plaintiff must show that she experienced harassment with the purpose to encourage her resignation. Plaintiff contends that Redden's campaign of retaliation from April 2018 to August 2018 forced her to resign in January of 2019. Record Document 50 at 18.

"[U]nremediated harassment may create a hostile work environment and cause a constructive discharge, but only if it is 'severe or pervasive' and 'create[s] an environment that a

reasonable person would find hostile or abusive."' *McCoy*, 492 F.3d at 558 (quoting *Septimus v. Univ. of Hous.*, 399 F.3d 601 (5th Cir. 2005)). Courts look to "the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* (citation omitted). The alleged conduct "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim." *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (internal quotation marks and citation omitted).

Plaintiff's evidence falls short of meeting this high standard. The alleged campaign of retaliatory conduct took place from April 2018 to August 2018, but Plaintiff did not resign until the end of February 2019. Importantly, during this five- to six-month gap, Plaintiff cannot point the Court to any further instances of conflict between Redden and herself. Moreover, the alleged conduct was neither severe nor pervasive enough to dissuade Plaintiff from filing a complaint with the Louisiana Department of Education on September 25, 2018, regarding CPSB's deficiencies in dyslexia assessment or from accepting a two-year contract extension in November 2018. Based on the record before the Court, Plaintiff has failed to show that a reasonable person would have been compelled to resign. Therefore, Plaintiff's allegation of constructive discharge must be dismissed.

## IV.   <u>Failure to Accommodate</u>

Plaintiff has alleged that Defendants violated the ADA by failing to provide a reasonable accommodation for her disability. Specifically, Plaintiff claims that she was required "to perform daily typing tasks that were impossible to complete during [her] normal working hours" because she does not have fingers or a thumb on one of her hands. Record Document 50-2 ¶ 16. According to Plaintiff, she requested additional compensatory time off as an accommodation for having to

work after hours to finish typing reports as she could only type with one hand. *Id.* Defendants contend that this accommodation request was an unreasonable request and could not be granted because Plaintiff was a salaried employee. Record Document 46-2 at 24. Additionally, Defendants aver that Plaintiff had worked as a 504 specialist since 1999 and that her disability had never interfered with her ability to prepare reports. *Id.*

"The ADA prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability.'" *Feist*, 730 F.3d at 452 (quoting 42 U.S.C. § 12112(a)). "Discrimination includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* (quoting 42 U.S.C § 12112(b)). Plaintiff must prove the following: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)). A "reasonable accommodation need not relate to the performance of essential job functions." *Id.* at 453. "A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered adverse employment action." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014); *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 804–05 (10th Cir. 2020). After an employee makes a request, "the ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). An employer who fails to engage in the interactive process in good faith could be subject to liability under the ADA. *Id.*; *Loulseged v. Akzo Nobel Inc.*, 178 F.3d

731, 736 (5th Cir. 1999). Typically, an employer is only held to have violated the ADA when the employer is responsible for the breakdown in the interactive process. *Loulseged*, 417 F.3d at 736.

Here, Defendants do not dispute that Plaintiff is a covered individual under the ADA or that they knew about her limitations. They only dispute Plaintiff's contention that they failed to make a reasonable accommodation. In this matter, it is undisputed that Plaintiff made a request for an accommodation. This request triggered Defendants' obligation to at least engage in an interactive process to see if it was possible to accommodate Plaintiff's disability. According to Plaintiff, Defendants simply denied her request. Regardless of the reasonableness of the specific accommodation requested by Plaintiff, a reasonable jury could conclude that after Defendants denied her request, they made no effort to engage in an interactive process with Plaintiff. Defendants did not propose alternative options, nor did they communicate with Plaintiff about a willingness to find a reasonable accommodation. When viewing the evidence in a light most favorable to Plaintiff, a jury could reasonably conclude that Defendants "failed [their] duty of reasonable accommodation because [they] took no action other than to reject [Plaintiff's] request." *Sears, Roebuck & Co.*, 417 F.3d at 807 (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374 (7th Cir. 2000)). As such, Defendants' motion is denied as to the failure-to-accommodate claim.

## V.    Intentional Infliction of Emotional Distress

Plaintiff has brought a state law tort claim for intentional infliction of emotional distress ("IIED"). She alleges that Redden's alleged campaign of retaliation from April 2018 to August 2018 caused her to suffer severe emotional distress and to seek counseling. Record Documents 50 at 19; 50-2 ¶ 13. In order to recover for IIED in Louisiana, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or

knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* The Fifth Circuit has observed that "Louisiana courts . . . have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that 'courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury.'" *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001) (quoting *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00); 765 So. 2d 1017, 1024–25).

In the workplace, Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas*, 765 So. 2d at 1026; *see Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992) (finding daily sexual harassment for two years coupled with threats of physical violence including rape sufficient to support a claim for IIED). The facts in this case simply fall short of meeting this high standard. *See Stewart v. Parish of Jefferson*, 95-407 (La. App. 5 Cir. 1/30/96); 668 So. 2d 1292, *writ denied*, 96-0526 (La. 4/8/96); 671 So. 2d 340 (dismissing IIED claim despite two years of harassment where supervisor questioned plaintiff's private life, increased plaintiff's workload, and pressured plaintiff to take a demotion); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049 (La. Ct. App. 1992) (dismissing IIED claim despite allegations of eight months of harassment from supervisor including shouting, cursing, name calling (dumb, stupid, and fat), and false accusations of poor work performance).

Here, Plaintiff has only pointed to a five-month period where Defendants could be said to have taken disciplinary action against Plaintiff, which is much shorter than the two-year period in *Stewart*. Additionally, "disciplinary action and conflict in a pressure-packed workplace

environment . . . is not ordinarily actionable." *White*, 585 So. 2d at 1210. The conduct alleged in this case is less severe and less pervasive than the conduct alleged in *Beaudoin*. Considering the summary judgment record, the conduct in this case was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Thus, Defendants are entitled to summary judgment as to Plaintiff's IIED claim.

## CONCLUSION

Based on the foregoing reasons, Defendants' Motion for Summary Judgment [Record Document 46] is **GRANTED IN PART** and **DENIED IN PART**. It is denied as to Plaintiff's failure-to-accommodate claim. It is granted as to all other claims; these claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 10th day of February, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE